**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF WISCONSIN**
**GREEN BAY DIVISION**

| | |
|---|---|
| **Matthew Lee Heidenreich,**<br>***Plaintiff, appearing*** In Propria Persona<br><br>v.<br><br>**HANNAH DOUBEK, Marinette County HHS/CPS Agent, personally and in her official capacity;**<br>**KARLA ROSA, Marinette County HHS/CPS Agent, personally and in her official capacity;**<br>**DEPUTY LIEBERGAN, Marinette County Sheriff's Deputy, personally and in his official capacity;**<br>**D. ZEMPEL, Marinette County Jail Officer, Badge No. 567, personally and in their official capacity;**<br>**JOHN/JANE DOE CORRECTIONS OFFICER, "Bail/Bond Processing Agent", personally and in their official capacity;**<br>**JOHN DOE DEPUTIES 1–5, unidentified male county deputies, personally and in their official capacities;**<br>**JANE DOE DEPUTIES 1–5, unidentified female county deputies, personally and in their official capacities;**<br>**JOHN/JANE DOE CPS AGENTS 1–3, unidentified CPS agents, personally and in their official capacities;**<br>**JOHN/JANE DOE PARAMEDICS 1–2, unidentified medical personnel, personally and in their official capacities;**<br>**DOLLAR GENERAL CORPORATION, a foreign corporation,**<br>***Defendants.*** | **Case No.** 26-CV-1841<br><br>**COMPLAINT FOR DEPRIVATION OF CONSTITUTIONAL RIGHTS UNDER 42 U.S.C. § 1983** |

U.S. District Court
Wisconsin Eastern
OCT 05 2026
FILED
Clerk of Court

## I. JURISDICTION AND VENUE

1. This Court has subject-matter jurisdiction over this action pursuant to **28 U.S.C. § 1331** and **28 U.S.C. § 1343(a)(3)** because this action is brought pursuant to **42 U.S.C. § 1983** to redress the deprivation of rights secured by the First, Fourth, and Fourteenth Amendments to the United States Constitution.

2. Venue is proper in the Eastern District of Wisconsin, Green Bay Division, pursuant to **28 U.S.C. § 1391(b)(1) & (b)(2)** because a substantial part of the events, omissions, severe physical injuries, and warrantless trespass giving rise to these claims occurred in Marinette County, Wisconsin.

## II. MASTER STATEMENT OF FACTS

### Phase I: The Underlying Worker's Compensation Injury, State Patrol Interference, and Pretextual Employment Termination Scheme

3. On November 11, 2022, Plaintiff suffered a severe, structural orthopedic spinal injury while executing direct employment duties for Aaron Vandenbush and Kustoms Services Inc., instantly establishing a vested statutory right to continuous worker's compensation medical coverage and wage-replacement benefits under State Claim Number 2026013112.

4. Following the execution of this high-liability spinal injury, and while Plaintiff was traveling to a work shift with an unhealed body, state troopers stepped outside their lawful traffic jurisdiction and directly contacted the commercial FedEx Ground office regarding two personal, off-duty, non-hazardous seat belt citations.

5. As a direct result of this outside law enforcement intervention, the state troopers successfully compelled the FedEx Ground office to force an administrative 60-day operational route suspension block against Plaintiff. This extrajudicial interference with a commercial contract constitutes a direct act of First Amendment retaliation and forms the initial link in the systemic conspiracy to destroy Plaintiff's livelihood.

6. Plaintiff stood down and completely complied with the full duration of the 60-day suspension block. Just prior to the completion of the suspension block, a separate, victimless, non-hazardous personal seat belt infraction occurred.

7. The company utilized this subsequent infraction as an artificial, bad-faith pretext to compel Aaron Vandenbush to terminate Plaintiff's employment. Not long after the suspension was completed, Plaintiff got into his vehicle and was actively in transit commuting to work to resume his duties when Aaron Vandenbush intercepted him via a telephone call mid-route, explicitly stating he was "forced to terminate Plaintiff's employment" and barring him from entering the premises.

8. Critically, during the exact timeframe of Plaintiff's forced suspension block, Aaron Vandenbush quietly liquidated his entire business infrastructure and sold his delivery fleet directly to his own employees. This asset transfer and telephone termination constitute a fraudulent conveyance and a pretextual scheme designed to evade his mandatory statutory duty to rehire and maintain an injured worker under Wis. Stat. § 102.35(3), shifting the financial burden of a catastrophic spinal injury onto Plaintiff's household.

9. Due to SECURA Insurance and the employer freezing all weekly lost-wage disability payments in bad faith, Plaintiff's household of ten dependents was thrown into immediate, catastrophic financial duress. The family's baseline survival funds were completely depleted, directly forcing Plaintiff's two minor daughters to surrender their own hard-earned, part-time commercial wages to pay the utility providers simply to restore basic electrical power to the home dwelling.

**Phase II: The Missing Minor and Initial Pre-Staged Containment Trap**

10. On July 17, 2026, Plaintiff's 11-year-old minor son left the family dwelling on a bicycle without parental knowledge. Approximately two hours passed before Plaintiff and his wife, Rachael, realized the minor was missing. The minor child rode the bicycle to the Wausaukee Dollar General store location, left the bicycle behind the building, and entered the store to hide out of fear.

11. A male employee and a female employee of Dollar General located the minor inside the store. Both employees used intense profanity in the 11-year-old child's presence, and the female worker contacted 911 dispatch.

12. At approximately 10:38 PM, Plaintiff initiated an emergency call to county dispatch from a location near his residence to report his missing minor son. The official audio recording of this dispatch call captures Plaintiff speaking in a calm, collected, and non-hostile manner, explicitly establishing his peaceful intent to locate his child.

13. During this initial emergency call, the dispatch operator solely stated to Plaintiff that a single county deputy was present at the storefront scene. While Plaintiff was actively heading to the location, county records and vehicle staging indicate that multiple county units and an emergency medical service (EMS) van were already systematically positioned on the lot prior to Plaintiff's arrival.

14. **Official State Contradiction and Fabricated Pretext:** According to the county's own official state intake paperwork (**Form JC-1608**), Defendant Karla Rosa and Defendant Deputy Liebergan documented that the minor child was officially seized and taken into temporary state custody on **July 17, 2026, at 10:18 PM**. This state-signed timeline establishes that the defendants unconstitutionally seized Plaintiff's minor child **twenty (20) minutes before Plaintiff ever initiated or completed the emergency call to report the child missing**, proving a pre-staged, premeditated containment trap.

**Phase III: The Detainments, Medical Coercion, and Retaliatory Assault**

15. Multiple county squad cruisers and one paramedic van were already present and strategically positioned on the Dollar General commercial lot when Plaintiff arrived. Unaware of the hidden danger, Plaintiff parked his van into the open space directly between two of the already-staged deputy cruisers, while a third cruiser sat positioned near the north front corner of the storefront.

16. At the exact moment Plaintiff parked between those two initial cruisers, the deputies immediately executed an unlawful, unconstitutional detention, surrounding Plaintiff and cutting off any avenue of exit before any lawful inquiry or investigation took place. The male county deputy who initiated this immediate containment and detention was the exact same actor who subsequently escalated the encounter into the physical assault.

17. This male deputy aggressively demanded that Plaintiff submit to an immediate Child Protective Services (CPS) interrogation regarding his family household. Plaintiff exercised his lawful right and explicitly refused to comply with or consent to this non-mandatory command. During the course of this unfolding dialogue on the lot, Plaintiff shared with the deputies that his 7-year-old minor son, A.H., had also attempted to walk to the Dollar General store location by himself on a single prior occasion.

18. When the two paramedic individuals exited their emergency medical vehicle (EMV), the third male deputy and the female deputy immediately went and stood near the front of the store parking lot, executing a coordinated tactical perimeter. Plaintiff attempted to communicate with the paramedics directly upon their arrival, but they completely ignored his words, bypassed him, and walked away to confer exclusively with the law enforcement actors.

19. While Plaintiff was restricted outside, the two responding paramedics subjected the 11-year-old minor to an aggressive, coercive interrogation inside the emergency vehicle regarding physical marks on his skin, acting completely without parental presence, notification, or consent. To Plaintiff's knowledge, only the paramedics participated in this closed interrogation.

20. The minor child explicitly informed the paramedics that the marks were simply mosquito bites. Defying the minor's statements, the paramedics actively coerced, pressured, and under duress led the 11-year-old child to alter his statement to claim the marks were "burns," intentionally manufacturing an egregious, fabricated accusation of child sexual abuse against his parents to create a false medical pretext for emergency removal.

21. Following the execution of this coercive interrogation, the two paramedics left the minor unattended inside the emergency vehicle and walked over to brief the male and female deputies, passing along the fabricated allegations to deliberately prompt the immediate physical escalation and tactical containment against Plaintiff.

22. Plaintiff successfully placed one phone call to his wife, Rachael, solely regarding the status and safety of his missing 11-year-old minor son. The moment Plaintiff attempted to initiate a second phone call, the three surrounding deputies completely cut off his communication and narrowed their perimeter.

23. Plaintiff explicitly gave clear, loud notice to all three surrounding deputies and the two nearby paramedics that he was actively going through injury recovery for a severe, re-aggravated spinal injury. Plaintiff further exercised his protected First Amendment rights and gave formal verbal notice to the actors that if they threatened his wife or his children, they would be facing a federal lawsuit.

24. In direct and immediate retaliation for Plaintiff exercising his protected speech and giving notice of his injury recovery, all present actors completely refused to acknowledge his medical condition. Instead, the three surrounding deputies immediately launched a physical assault, forcefully throwing Plaintiff's body onto the asphalt, applying tightly

cinched handcuffs, and finalizing a wrongful arrest without probable cause.

25. During the initial detention and physical assault on the Dollar General property, the male store employee was standing directly by the entrance doors of the retail facility, placing him in immediate physical proximity to observe the entirety of the deputies' excessive use of force. The female store employee was located inside the store building during this sequence.

26. Immediately following the physical assault, while Plaintiff was restrained and being moved, the responding county deputies utilized their positions of authority to intentionally intimidate, threaten, and pressure the male store employee standing at the entrance to prevent an honest reporting of the misconduct. This intimidation directly caused the male employee to later state to Plaintiff's wife that Plaintiff "deserved what he got" out of absolute fear of official retaliation.

27. Prior to being moved from the store, the minor child had removed his own personal shoes and left them on a retail store shelf. The female deputy on the scene bypassed the minor's actual shoes and seized an entirely separate pair of shoes from the Dollar General business retail inventory, forcing the minor child to wear them.

**Phase IV: Unlawful Minor Transportation and Detention**

28. While inside the EMS van at the initial scene, Plaintiff's 11-year-old son, G.H., could physically hear the physical assault and arrest being executed against his father by the three deputies.

29. All three responding deputies took custody of the minor and unlawfully transported him directly to an Emergency Room (ER) facility. At the ER, officials subjected the minor to forced medical X-rays and invasive investigative examinations regarding the fabricated abuse allegations, acting completely without parental knowledge, presence, or consent.

30. Following the hospital extraction, the minor was transported to the police department and held in isolation for a total captivity period lasting nearly 10 hours, during which he was provided only a single snack bar and water.

31. Immediately before the minor child was permitted to leave the police station to be returned home, officials forcefully removed the inventory shoes from him, deliberately ensuring the 11-year-old child was delivered back to his mother completely barefoot.

**Phase V: Jail Block Retaliation, Unlawful Conditions, and Secondary Cell Assault**

32. Plaintiff was transported under arrest to the county jail facility, arriving under a documented booking file of Booking Number: 26-1323. Upon arrival, jail personnel again commanded Plaintiff to take a breathalyzer test, force-change into facility garments, and read the compliance wall chart. Plaintiff exercised his lawful right and declined the demands.

33. In direct retaliation for Plaintiff's refusal, a tall deputy picked up Plaintiff's securely handcuffed frame and violently slammed his body down onto a thin mattress resting on a rigid concrete block bed.

34. This secondary slamming assault directly compounded and exacerbated the further re-aggravated spinal trauma, acute back trauma, chest trauma, and asphyxiation symptoms Plaintiff was already enduring from the first physical assault at the Dollar General store.

35. At approximately 00:11:40 AM, Defendant Officer D. Zempel (Badge No. 567) initiated the processing of Plaintiff's personal property into storage. Immediately following the mattress-slamming assault inside the cell, jail actors forcefully stripped Plaintiff's clothing off his frame. Utilizing shears, the actors forcefully shredded Plaintiff's shirt off his body, completely destroying his property and leaving him exposed under severe physical duress while leaving his lower blue jeans intact.

36. Defendant Officer D. Zempel explicitly typed and logged the physical destruction of Plaintiff's upper garments into the county's official computer system record, certifying the description of the item on the property stored receipt verbatim as: "shirt orange - cut off". Defendant Zempel finalized this property logging action at a logged digital timestamp of 1:34:48 AM.

37. When presented with the administrative booking and property intake paperwork under duress, Plaintiff exercised his right to refuse to sign the forms. Defendant Officer D. Zempel recorded this refusal on the face of the receipt by writing "Refused" across Plaintiff's designated signature line.

38. Throughout Plaintiff's wrongful detention at the jail facility, a significant presence of unidentified county personnel was actively deployed inside the booking area and cell blocks, consisting of approximately two (2) to three (3) female deputies and four (4) to five (5) male deputies. These jail actors deliberately refused to hear or acknowledge Plaintiff's repeated, urgent expressions of concern regarding the physical safety, medical conditions, and whereabouts of his wife, Rachael, his minor children, or himself. Instead of providing necessary medical or administrative attention, the facility staff repeatedly and forcefully shut the cell door window to completely cut off Plaintiff's voice and isolate him in severe distress.

39. During this period of isolation, an unidentified female deputy engaged in a coercive tactic, attempting to pressure Plaintiff into putting on facility prison garments by stating that compliance would lead to an expedited release. Plaintiff stood his ground, exercised his protected First Amendment rights, and explicitly warned the female deputy that if she did not remove herself from participating in this unconstitutional environment, his impending civil rights lawsuit would bring their systemic official misconduct to complete legal accountability.

40. The Kiosk Release Execution: Following the intake processing, a county judicial case file was opened under Case No. 26S08885, logging a cash bail condition of $450.00. To execute the release process, Plaintiff's wife, Rachael Heidenreich, physically deposited $460.00 in cash into the facility's custody. An unidentified jail official, acting as John/Jane Doe Corrections Officer (Bail/Bond Processing Agent), accepted the funds and authorized the official state bail/bond form using handwritten, illegible initials rather than a full legible name. Plaintiff was confined to the cell block in

severe physical distress; jail personnel refused to provide necessary medical accommodations, structural support, or immediate evaluation by a physician for his acute spinal and chest trauma.

**Phase VI: Coordinated Home Intimidation Raid and Continuous Surveillance**

41. At approximately 2:34 AM, while Plaintiff was held in a cell block and his son was held in isolation at the station, a coordinated task force of deputies and CPS agents, including Defendant Karla Rosa, executed a warrantless, premeditated night raid on Plaintiff's private residence in care of N11286 Nejedlo Road, Wausaukee, Wisconsin.

42. The actors forced entry into the dwelling without a warrant, exigent circumstances, or consent, overstepping maternal authority, threatening Plaintiff's wife, Rachael, and executing an unconstitutional search and seizure that caused severe emotional and physical duress to the entire household. Following the execution of the 2:34 AM raid, and after the invasive ER X-rays completely cleared the minor of all manufactured allegations, a CPS agent finally delivered the barefoot minor back to the dwelling.

43. Continuous Unlawful Surveillance and Harassment Scheme: Defendant Hannah Doubek has engaged in continuous, retaliatory surveillance against Plaintiff's family household. Operating as part of a coordinated scheme to manufacture and weaponize false allegations of physical, neglectful, and sexual abuse against Plaintiff and his wife Rachael, Defendant Doubek's relentless surveillance has placed the entire household under perpetual duress, intentionally violating their Fourteenth Amendment Substantive Due Process right to familial integrity and privacy.

**Phase VII: Objective Medical Documentation of Physical Injuries**

44. The tightly cinched handcuffs applied by the three initial deputies caused acute nerve compression, resulting in immediate, severe, and ongoing neurological sensations.

45. Subsequent diagnostic MRI imaging of Plaintiff's lumbar spine objectively documents the severe, further re-aggravated spinal trauma and structural damage compounded by the sequential physical assaults, revealing:

- **L3–L4:** Mild disc bulge with minimal right and mild left lateral recess narrowing.
- **L4–L5:** Minimal disc bulge and a mild depth central protrusion with mild bilateral lateral recess narrowing.
- **L5–S1:** Mild facet arthropathy, mild ligamentum flavum/joint capsule thickening, and a mild central/right central protrusion causing **moderate bilateral foraminal narrowing**, confirming severe mechanical compression and crowding of the lower nerve roots.

## III. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against all Defendants, granting the following relief:

A. **Compensatory Damages:** Award substantial compensatory financial damages against all individual and corporate Defendants, jointly and severally, in an amount to be determined at trial, for permanent structural spinal and nerve injuries, physical pain, severe emotional trauma, economic loss, unlawful barefoot captivity of a minor, and warrantless trespass upon private land.

B. **Punitive Damages:** Award significant punitive damages against all individual defendants in their personal capacities to punish them for their malicious, bad-faith, and retaliatory conduct, including the physical slamming of a handcuffed person, forced shearing of clothes, deliberate shielding of medical distress, witness intimidation, and fabrication of false sexual abuse allegations.

C. **Injunctive and Declaratory Relief:** Enter a formal judicial declaration that the defendants' warrantless night raid and physical assaults violated the United States Constitution, and issue immediate orders permanently enjoining defendants from engaging in continuous surveillance or harassment against Plaintiff's family household.

D. **Additional Relief:** Grant any such further lawful or equitable relief as this Court deems just and proper.

Dated this 21 day of September, 2026.

Respectfully submitted,

By: Matthew Lee Heidenreich

**Matthew Lee Heidenreich**
*Plaintiff,* In Propria Persona
N11286 Nejedlo Road, Wausaukee, Wisconsin